**Jaburg & Wilk, P.C.**
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
602.248.1000

Jeffrey Silence (029143)
JXS@jaburgwilk.com
David N. Farren (007384)
dnf@jaburgwilk.com
Alden A. Thomas (031900)
AAT@jaburgwilk.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| DR. KAREN RUSSO ANDERSON , | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| MARICOPA COUNTY COMMUNITY COLLEGE DISTRICT, a government entity and political subdivision of the State of Arizona; MARIA WISE, both individually and in her official capacity as the former Vice President of Academic and Student Affairs of Gateway Community College; and JANE DOE WISE, her wife, | |
| Defendants. | |

Plaintiff Dr. Karen Russo Anderson alleges:

1.     This action is brought pursuant to Title VII of the Civil Rights Acts of 1964 as amended, 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1983, and state law.

## **PARTIES, JURISDICTION AND VENUE**

2.     Plaintiff Dr. Karen Russo Anderson ("Dr. Russo Anderson") at all times relevant is and has been an individual and resident of Maricopa County, Arizona.

JABURG|WILK
Attorneys at Law

3.    Defendant Maricopa County Community College District ("MCCCD") is a government entity and a political subdivision of the State of Arizona and at all relevant times acted under color of state law.

4.    Defendant Maria Wise is an individual and a citizen and resident of the State of Arizona who, both individually and in her official capacity as the former Vice President of Academic and Student Affairs of GateWay Community College (GWCC), a community college under the direction and control of MCCCD, and all relevant times acted on behalf of MCCCD and under color of state law.

5.    Ms. Wise currently serves as the Vice President of Student Affairs of GWCC.

6.    Upon information and belief, Defendant Jane Doe Wise is the spouse of Defendant Maria Wise whose true name and identity are not known to Plaintiff at this time and who, by virtue of their martial community, is liable, jointly and severally, with Defendant Maria Wise.

7.    All acts of any Defendant alleged in this Complaint were performed on the acting Defendant's own behalf, on behalf of it his or her marital community and on behalf of each and every other Defendant within the scope of his or her authority, actual or apparent, or as an alter ego of each other.

8.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

9.    Venue is proper in this this Court pursuant to 28 U.S.C. § 1391(b)(2) as the events or omissions giving rise to the claim occurred within this District.

## GENERAL ALLEGATIONS

### I.    Background

10.    Dr. Russo Anderson incorporates by reference all allegations made above as if fully set forth here.

2

11.     Dr. Russo Anderson is an experienced and very well qualified educator whom was employed by MCCCD for approximately twenty-nine years.

12.     Dr. Russo Anderson holds a bachelor's degree in human resources, a master's degree in organizational management, and a doctorate degree in instructional design, with an emphasis in online learning.

13.     Dr. Russo Anderson is a heterosexual, married woman.

14.     Dr. Russo Anderson conforms to typical female gender stereotypes, which include dressing femininely, acting femininely, and wearing makeup.  She married to a man.

**II.     Dr. Russo Anderson's Employment History at MCCCD**

15.     Dr. Russo Anderson began working for MCCCD in 1988; she has changed positions multiple times as she gained experience and as new opportunities became available.

16.     In October 2012, Dr. Russo Anderson started a new position at GWCC as an instructional designer.  In that capacity, she worked with GWCC faculty to improve their lesson plans and testing by using modern methodology aimed at engaging students and creating an academic environment conducive for learning.

17.     Dr. Russo Anderson also worked closely with John Lampignano, the GWCC Director of the Center for Teaching, Learning and Employee Development (the "CTL Director").

**III.     Dr. Russo Anderson Applies for The CTL Director Position.**

18.     In May 2016, Mr. Lampignano retired from his position as the GWCC CTL Director.

19.     Because of Dr. Russo Anderson's superior qualifications, GWCC asked her to serve as the Acting CTL Director until a new CTL Director was hired.

3

20. In or around August 2016, Ms. Wise, in her official capacity as the Vice President of Academic and Student Affairs of GWCC, met with the GWCC Center for Teaching and Learning staff to identify the knowledge, skills, and abilities required for a new Director.

21. A GWCC committee was appointed to make findings and recommend who should fill the CTL Director position (the "CTL Director Committee").

22. Upon information and belief, the CTL Director Committee determined that preference for the CTL Director position would be given to candidates who held advanced degrees and had substantial experience working in academia.

23. Soon after the CTL Director Committee was formed, Dr. Russo Anderson applied for the open CTL Director position, a position for which she was very well qualified.

24. On August 29, 2016, Dr. Russo Anderson interviewed with the CTL Director Committee, which recommended Dr. Russo Anderson for a second interview with Dr. Wise.

25. The CTL Director Committee recommended Dr. Russo Anderson for a second interview because it determined that Dr. Russo Anderson was the most qualified candidate for the CTL Director position.

26. Upon information and belief, Dr. Russo Anderson was the only candidate the CTL Director Committee recommended for a second interview with Dr. Wise.

**IV.    GWCC and Dr. Wise's Discriminatory CTL Director Search Process**

27. Upon information and belief, Defendant Maria Wise is a lesbian woman.

28. Upon information and belief, Dr. Wise does not conform to typical female gender stereotypes. Upon information and belief, Dr. Wise is a lesbian and is married to a woman.

4

29.    Ms. Wise was the decision-maker in CTL Director search process. As the decision-maker, she was to select the most qualified candidate for the CTL Director position based on the CTL Director Committee's findings and recommendation.

30.    Ms. Wise, however, wholly disregarded and overruled the CTL Director Committee's findings and recommendation, claiming it was her practice to select among several candidates, not just one, that the CTL Director Committee's process was flawed, and that she wanted everyone to start over.

31.    Ms. Wise unilaterally and unreasonably determined that the CTL Director Committee "failed" its search process and informed Dr. Russo Anderson of the "failed" search process

32.    The CTL Director Committee's search process started over again in 2017.

33.    Before the CTL Director Committee could begin interviewing candidates, Ms. Wise unilaterally and unreasonably lowered the standards and qualifications for the CTL Director position. Upon information and belief, preference for the position was given to candidates who earned bachelor degrees, instead of more qualified candidates who earned master's or doctorate degrees. Upon further information and belief, the requisite level and years of experience were also reduced.

34.    The CTL Director Committee met, screened and interviewed applicants; it recommended Dr. Russo Anderson and two others for the CTL Director position.

35.    The CTL Director Committee again made its findings and recommended Dr. Russo Anderson as the one of the most qualified candidates for the position.

36.    On September 12, 2017, Dr. Russo Anderson had a second interview with Dr. Wise for the CTL Director position.

37.    On September 15, 2017, a colleague, Juliane Roybal, informed Dr. Russo Anderson and Michaelle Shadburne, another colleague, that she (Ms. Roybal) had also applied for the CTL Director position, but was not asked to do a second interview.

38.     After Ms. Roybal left that conversation, Ms. Shadburne astutely asked Dr. Russo Anderson, "Why would she think she would get a second interview?" It was well known and established at MCCCD, and in fact true, that Dr. Russo Anderson's knowledge, skills, abilities and experience were far superior to Ms. Roybal's.

39.     Upon information and belief, Ms. Roybal has not earned a doctorate degree and has substantially less experience relevant to the CTL Director position than does Dr. Anderson.

40.     Upon information and belief, Ms. Roybal is a lesbian woman.

41.     Upon information and belief, Ms. Roybal does not conform to typical female gender stereotypes, presents herself masculinely, and is married to a woman.

## V.     GWCC and Dr. Wise Discriminate Against Dr. Russo Anderson and Give the CTL Director Position to a Far Less Qualified Candidate.

42.     Dr. Wise refused to pick any of the three recommended candidates or to follow the CTL Director Committee's initial recommendation that Dr. Russo Anderson be given the position.

43.     Dr. Wise rejected all three candidates, including Dr. Russo Anderson, and instead chose Ms. Roybal, who was not recommended for the position, who the CTL Director Committee did not call back for a second interview, who was less qualified for the CTL Director position than any of the candidates who were considered, and who was far less qualified for the position than Dr. Russo Anderson.

44.     Upon information and belief, Dr. Wise chose Ms. Roybal for the CTL Director position because of her sex, her sexual orientation, and because, like her, Ms. Roybal does not conform to typical gender stereotypes.

## VI.     Dr. Russo Anderson Suffers Financial and Emotional Damages.

45.     Upon information and belief, the CTL Director earns a higher salary than Dr. Russo Anderson earned as an instructional designer at GWCC.

46. GWCC's and Dr. Wise's actions have prevented Dr. Russo Anderson from advancing her career, earning a higher salary, and receiving better benefits as the CTL Director, the position for which the CTL Director Committee recommended her.

47. As a direct and proximate result of GWCC's and Dr. Wise's wrongful and unlawful conduct, Dr. Russo Anderson has also suffered mental anguish, emotional distress, pain and suffering, humiliation, harm to reputation and loss of enjoyment of life and was constructively discharged from her position at GWCC.

**VII. Dr. Russo Anderson Files a Charge for Discrimination.**

48. On or about October 10, 2017, Dr. Russo Anderson filed a Charge for Discrimination against GWCC with the EEOC. The Charge is attached as **Exhibit A.**

49. On December 14, 2018, the EEOC issued Dr. Russo Anderson a Notice of Right to Sue Letter for discrimination charges against GWCC. The Notice is attached as **Exhibit B**.

50. Dr. Russo Anderson received an EEOC Notice of Right to Sue Letter on December 28, 2018. The envelope documenting this date is attached as **Exhibit C**.

51. Dr. Russo Anderson has filed this Complaint within 90 days of her receipt of the EEOC's Right to Sue Letter.

**COUNT ONE**
**SEX DISCRIMINATION UNDER TITLE VII**
**(Against Defendant MCCCD)**

52. Dr. Russo Anderson incorporates by reference all above allegations as if fully set forth herein.

53. 42 U.S.C. § 2000e-2 provides that it unlawful for an employer to refuse to hire or otherwise discriminate against an employee on the basis of sex. This includes discrimination based on sex, including without limitation sexual orientation, and for conforming to or failing to conform to gender stereotypes.

54.     GWCC was Dr. Russo Anderson's "employer" as that term is defined by 42 U.S.C. § 2000e(b).

55.     GWCC discriminated against Dr. Russo Anderson because of her sex.

56.     GWCC did not properly promote Dr. Russo Anderson to the CTL Director position because of her sex, her sexual orientation, and her conformity to typical female gender stereotypes.

57.     GWCC gave Ms. Roybal the CTL Director position because each shares the same her sexual orientation and, like Ms. Wise, she does not conform to typical female gender stereotypes.

58.     Dr. Russo Anderson was far more qualified for the CTL Director position than Ms. Roybal because Dr. Russo Anderson had earned a doctorate degree and nearly 30 years of experience at MCCCD, while Ms. Roybal had earned only a master's degree and has significantly fewer years of experience than Dr. Russo Anderson.

59.     As a direct and proximate result of GWCC's acts and omissions, Dr. Russo Anderson has lost career advancement opportunities and wages and benefits and has suffered mental anguish, emotional distress, pain and suffering, humiliation, harm to reputation and loss of enjoyment of life and was constructively discharged from her long-standing position at GWCC.

60.     Dr. Russo Anderson has filed a discrimination charge with the EEOC and has completed all actions required for her to now proceed with her Title VII claim.

WHEREFORE Dr. Russo Anderson seeks judgment against Defendant MCCCD/ GWCC for the following relief:

A.     Her damages in an amount to be proved at trial;

B.     An award of her attorney fees and costs;

8

C.   Ordering MCCCD to reinstate Plaintiff to her former position and to promote her to the position of CTL Director, where she would have been if not for the unlawful discrimination complained of herein; and

D.   Such other such relief as seems just and proper.

## COUNT TWO
## SEX DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1983 and the Fourteenth Amendment
### (Against All Defendants)

61.   Dr. Russo Anderson incorporates by reference all above allegations as if fully set forth herein.

62.   Dr. Wise subjected Dr. Russo Anderson to discrimination based on her sex, her sexual orientation, and her conformity to typical female gender stereotypes in violation of the Fourteenth Amendment.

63.   Dr. Wise's sex-based discrimination against Dr. Russo Anderson was the cause of giving the CTL Director position to a less qualified candidate who did not conform to typical female gender stereotypes.

64.   As a GWCC employee, Dr. Wise acted under color of state law.

65.   By virtue of their martial community, Jane Doe Wise is liable, jointly and severally, for Dr. Wise's acts and omissions as alleged herein.

66.   As a direct and proximate result of GWCC's and Dr. Wise's conduct, Dr. Russo Anderson lost career advancement opportunities and wages and benefits and has suffered mental anguish, emotional distress, pain and suffering, humiliation, harm to reputation and loss of enjoyment of life and was constructively discharged from her position at GWCC.

WHEREFORE, Dr. Russo Anderson seeks judgment against all Defendants for the following relief:

A.   Her damages in an amount to be proved at trial;

JABURG|WILK
Attorneys at Law

1          B.    Entry of an Order granting appropriate injunctive relief, including,

2    without limitation:

3          (1)  Ordering MCCCD to reinstate Plaintiff to her former position and to

4    promote her to the position of CTL Director, where she would have been if not for the

5    unlawful discrimination complained of herein; and

6          (2)  Enjoining all Defendants, and each of them, to cease and desist from

7    continuing to discriminate against Plaintiff or any other employee on the basis of sex or

8    sex stereotypes, as alleged;

9          B.    An award of her attorney fees and costs; and

10         C.    Such other such relief as seems just and proper.

11
12   **COUNT THREE**
**CONSTRUCTIVE DISCHARGE**
**(Against Defendant MCCCD)**

13   67.    Dr. Russo Anderson incorporates by reference all above allegations as if

14   fully set forth herein.

15   68.    Due to GWCC's actions, Dr. Russo Anderson was forced to work in a

16   hostile work environment created by and because of the unlawful discrimination and

17   hostile work environment alleged above, such that the GWCC workplace had become

18   so difficult and unpleasant that no reasonable employee would have tolerated it and she

19   felt compelled to resign from her long-standing position at GWCC.

20   69.    Accordingly, under Arizona law, Dr. Russo Anderson was constructively

21   discharged from her long-standing position as a GWCC instructional designer, which is,

22   in effect, a wrongful termination without cause under Arizona law and public policy.

23   70.    As a direct and proximate result of GWCC's actions that resulted in her

24   constructive discharge, Dr. Russo Anderson has lost career advancement opportunities

25
26
           10

and wages and benefits and has suffered mental anguish, emotional distress, pain and suffering, humiliation, harm to reputation and loss of enjoyment of life.

WHEREFORE, Dr. Russo Anderson seeks judgment against Defendant MCCCD /GWCC for the following relief:

A.    Her damages in an amount to be proved at trial;

B.    An award of her attorney fees and costs; and

C.    Such other such relief as seems just and proper.

**JURY TRIAL DEMAND**

Dr. Russo Anderson demands a jury trial on all claims and issues set forth herein.

DATED this 15th day of March, 2019.

**Jaburg & Wilk, P.C.**

s/ Jeffrey A. Silence
Jeffrey A. Silence
David N. Farren
Alden A. Thomas
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
*Attorneys for Plaintiff Dr. Karen Anderson*